IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON LEE SWENDRICK,

      Plaintiff,

v.                                      Case No. 2:16-cv-1177

                                         Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

**OPINION AND ORDER**

Plaintiff, Jason Lee Swendrick, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 10). For the reasons that follow, Plaintiff's Statement of Errors is **AFFIRMED**, and the Commissioner's decision is **REVERSED** and **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I. BACKGROUND**

Plaintiff filed his application for benefits on April 22, 2013 with an alleged onset date of March 1, 2009. (R. at 148-149, 217-223.) Plaintiff alleges disability from a brain tumor, seizures, depression, and a hip condition. (R. at 135.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 171-186.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 187-188.)

Administrative Law Judge Edmund E. Giorgione (the "ALJ") held a hearing on June 11, 2015, at which Plaintiff, represented by counsel, appeared and testified. (R. at 92-99.) Vocational Expert W. Bruce Walsh, Ph.D. (the "VE"), also appeared and testified. (R. at 99-102.) On September 24, 2015, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 67-80.) On October 18, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-4.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he is thirty-four years old, divorced, and lives with his mother in her trailer home. (R. at 92.) Plaintiff also testified that he is a veteran of the United States Army and derives some income from Veterans Administration disability benefits. (R. at 93.) Plaintiff stated that he last worked five years before the hearing but was let go because of his seizures. (*Id*.) Plaintiff also stated that he was fired from several other jobs because of his seizure condition. (R. at 94.)

Plaintiff testified that he suffered a grand mal seizure in the month before the hearing. (R. at 95, 97.) According to Plaintiff, the seizure occurred while he was at Walmart and he woke up in the hospital with a broken tooth and an injured jaw. (R. at 97.) According to Plaintiff, he suffered another seizure a couple of weeks prior to that. (R. at 95.) When asked how often he has seizures, he replied that "[i]t happens more than not. I mean, it is—it happens often." (*Id*.) Plaintiff testified that his seizures last anywhere from a few seconds to minutes. (*Id*.)

Plaintiff testified that he cannot do some household chores and must live with his mother. (R. at 95-96.) Plaintiff also testified that he is restricted from driving, does not drink or use illegal drugs, and takes medications that make him drowsy and put him to sleep. (R. at 96.) Plaintiff further testified that his mother has to remind him daily to take his medication, and that the local sheriff has had to do welfare checks on him when he was not able to answer his mother's calls. (R. at 97.) Plaintiff stated that he suffers from mood swings and anger. (R. at 97-98.) Plaintiff also stated that he can only be with his children when his mother is there. (R. at 98.)

**B. The VE's Testimony**

The VE testified at the administrative hearing that Plaintiff's past jobs include unskilled and semi-skilled construction worker. (R. at 100.) The ALJ proposed a hypothetical question based on the ALJ's eventual determination of Plaintiff's residual functional capacity ("RFC"). The VE testified that such a hypothetical person could not perform Plaintiff's past relevant work, but could perform other jobs that exist in the state and national economy, such as packager, office clerk, and marker. (R. at 100-101.)

The ALJ then asked the VE to consider the hypothetical individual, "except due to seizure disorder, this individual would not be able to consistently maintain an eight hour day or a 40 hour work week, because of time off task due to being unaware." (R. at 101.) The VE responded that the hypothetical person could not do any work. (R. at 102.)

## III. MEDICAL RECORDS

### A. Veterans Administration

In his Veterans Administration treatment notes, Dr. Mehr Siddiqui provided a history of patient's seizure disorder. While serving in the Army at Fort Hood, Texas, Plaintiff had a headache that lasted for month in 2002. (R. at 534.) During that time, while he was on terminal leave, he reported a generalized convulsion that lasted for ten minutes. (*Id*.) Plaintiff was admitted to Riverside Hospital in Columbus, Ohio, where an MRI revealed a left temporoparietal tumor. (*Id*.) A biopsy revealed that it was benign and no radiation or chemotherapy followed. (R. at 534-535.) A 2009 MRI revealed encephalomalacia in the left temporoparietal lobe and mid parietal region. (R. at 535.) An EEG was abnormal, "consistent with seizure activity." (R. at 533.)

On March 9, 2011, Dr. Siddiqui saw Plaintiff, who complained of "small seizures which may last for 30 seconds." (R. at 535.) The seizures consisted of "blanking out spells or staring in space." (*Id*.) At that time, Plaintiff was not experiencing grand mal seizures, although six months prior Plaintiff did experience an increased number of seizures. (*Id*.) Plaintiff attributed his increase in seizure activity to stress from his divorce. (*Id*.) Plaintiff described experiencing one generalized seizure per month, usually convulsive and lasting up to one minute. (R. at 533.) Upon examination, Plaintiff scored 30/30 on his mini mental examination. (R. at 535.)

Plaintiff returned on March 25, 2013 after suffering another seizure after not taking his anti-seizure medication. (R. at 551.) Plaintiff reported being back on his meds at the time of his visit. (R. at 551.)

### B. Ohio State University Medical Center

On August 24, 2012, Plaintiff was admitted to the Ohio State University Medical Center ("OSUMC") after suffering a seizure. (R. at 302-303.) Plaintiff reported experience grand mal and petit mal seizure once or twice per month. (R. at 302.) Plaintiff also reported consistently taking all of his anti-seizure medication. (*Id.*) The treating physician told Plaintiff that, in order to recover from the seizure, he needed a "supportive care environment from family and friends." (R. at 303.)

### C. Grady Memorial Hospital

On March 16, 2013, Plaintiff was admitted to Grady Memorial Hospital after suffering a seizure while preparing to pick up his children. (R. at 334.) Plaintiff's father witnessed the seizure and called 911. (*Id.*) Upon arrival at the hospital, Plaintiff stated that he still felt foggy and that although he did not recall the seizure, he recalled what he was doing before it. (*Id.*) Plaintiff was observed for ninety minutes before being released. (R. at 335.)

On April 22, 2015, Plaintiff returned after suffering a seizure lasting up to two minutes at a restaurant with his mother. (R. 805.) During the seizure, Plaintiff struck his head on the table. (*Id.*) Plaintiff had not suffered a seizure in the six prior months. (*Id.*) Plaintiff was postictal upon arrival, but was alert and oriented during examination. (*Id.*)

### D. Union County Memorial Hospital

On September 13, 2013, Plaintiff was admitted to Union County Memorial Hospital after suffering a seizure at a friend's house. (R. at 421.) According to the medics who responded, Plaintiff was upright and walking around upon their arrival. (*Id.*) On his way home after being discharged, Plaintiff suffered another seizure lasting approximately two minutes. (R. at 445.)

According to the hospital's treatment notes, Plaintiff was "confused with aphasia" and "combative with staff when getting him out of car." (*Id.*)  Plaintiff subsequently had a third seizure with hypoxia while in the emergency department and "return[ed] to baseline 30 minutes after seizure." (R. at 454.)  Hospital staff administered a Keppra IV, after which Plaintiff's seizure activity ceased.  (R. at 455.)

Plaintiff returned on December 27, 2013, after suffering another seizure lasting two minutes with a ten to fifteen minute postictal state.  (R. at 604.)  He suffered his last previous seizure approximately one month prior.  (*Id.*)

On May 30, 2015, Plaintiff suffered a seizure outside Walmart and fell to the concrete, hitting his face.  (R. at 823.)  Plaintiff reported that his seizures were better controlled since Dr. Siddiqui adjusted his medication eighteen months prior.  (R. at 824.)

**E.  Mount Carmel East**

On November 26, 2013, Plaintiff was admitted following a seizure and transfer from the Veterans Administration Hospital.  (R. at 595.)  According to hospital treatment notes, "[Plaintiff] did have a post ictal episode and now is at his a slight mental status [*sic*]." (*Id.*)  Plaintiff reported that he suffers seizure episodes anywhere from once every several months to every two weeks.  (*Id.*)

**F.  State Agency Review**

On November 30, 2013, non-treating state agency medical consultant Maureen Gallagher, D.O., M.P.H., reviewed Plaintiff's record for the state agency pursuant to his application for benefits.  Dr. Gallagher adopted the RFC from Plaintiff's previous claim for

disability benefits dated November 19, 2011 and made no special findings with respect to Plaintiff's seizure disorder. (R. at 161-162.)

Upon reconsideration on November 30, 2013, non-treating state agency medical consultant Dimitri Teague, M.D., also reviewed Plaintiff's records. Dr. Teague confirmed Dr. Gallagher's findings and also adopted the previous RFC. (R. at 161-162.)

## IV. ADULT FUNCTION REPORT

On June 4, 2013, Plaintiff completed an Adult Function Report for the Social Security Administration. (R. at 244-251.) Plaintiff reported that he lives with his parents in their trailer. (R. at 244.) Plaintiff also reported difficulty with his seizure disorder, memory, and following instructions that limits his ability to work. Plaintiff further reported that he takes walks and takes his children to the park. (R. at 245.) According to Plaintiff, he only has them every other weekend and his mother takes care of them when he does. (*Id*.) Plaintiff stated that he has a difficult time reading, cannot play sports, and is required to have another adult present when he is with his children. (R. at 248.) Plaintiff reported that his girlfriend takes him to the park when his children visit. (*Id*.) Plaintiff also reports that he visits his friends in the trailer park. (*Id*.)

Plaintiff stated that, because of his conditions, even though he feels sleepy, he cannot sleep. (R. at 246.) Plaintiff indicated that he needs reminders to take care of his personal needs, grooming, and to take his medicine. (R. at 246.) Plaintiff also indicated that he prepares his meals on a weekly basis and that it takes him longer to do so since his condition began. (*Id*.) Plaintiff further indicated that he does not do house or yard work because he is not allowed to use tools as a result of his seizure disorder. (R. at 247.) Plaintiff stated that he is not allowed to drive due to the frequency of his seizures. (*Id*.) Plaintiff also stated that he goes shopping with

his mother and that it takes up to ninety minutes to buy groceries with her help. (*Id*.) Plaintiff further stated that he pays bills and has a savings account, but that his parents cancelled his checking account. (*Id*.) According to Plaintiff he cannot pay attention long before drifting off and losing focus. (R. at 249.) Plaintiff listed drowsiness, depression, and agitation as side effects of three drugs that he takes and mood and depression as side effects of the fourth. (R. at 251.)

## V.  THE ADMINISTRATIVE DECISION

On September 24, 2015, the ALJ issued his decision. (R. at 67-80.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since March 1, 2009, the amended alleged onset date, through December 31, 2014, the date last insured. (R. at 69.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ found that Plaintiff had the severe impairments of seizure disorder, benign brain tumor; avascular necrosis of the hip, bilaterally, and depressive disorder. (R. at 70.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 72.) At step four of the sequential evaluation process, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, [the ALJ] find[s] that, through the date last insured, the [Plaintiff] has the residual functional capacity to lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently; occasionally stoop, crouch, kneel, crawl, and climb ramps/stairs; never climb ladders/ropes/scaffolds; and never work at unprotected heights or around moving machinery. Additionally, the claimant can understand, remember, and carry out simple to moderately complex instructions, can sustain attention and concentration for two hour segments over an eight hour workday, can respond appropriately to supervisors and co-workers in a task oriented setting where contact with others is casual and infrequent, able to adapt to simple changes and avoid hazards in a setting without strict production demands.

(R. at 74-75.) In reaching this determination, the ALJ found that Plaintiff has mild restrictions in activities of daily living. (R. at 73.) Summarizing the record, the ALJ stated as follows:

> On June 4, 2013, the claimant stated that he took his children to the park, took care of his two dogs, took care of his personal needs, sometimes prepared meals, took walks, went shopping, took care of paying the bills, watched television, listened to music, and visited with his girlfriend and other friends two to three times per week. The claimant also ate out. And although his testimony is after his date last insured, the claimant stated that he does some of the household chores, such as cooking, laundry, and doing the dishes. Based on this evidence I conclude that the claimant's daily activities prior to his date last insured were only mildly limited.

(*Id.*) The ALJ stated that, "[t]he amount of activities in which the claimant is able to engage is not indicative of someone with debilitating symptoms." (R. at 77.) The ALJ found that Plaintiff is "able to function independently . . . with the exception of being unable to drive." (R. at 74.)

9

In taking account of Plaintiff's seizure disorder, the ALJ found that he cannot "work around hazards, including ladders/ropes/scaffolds, moving machinery, or at unprotected heights.

## VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VII. ANALYSIS

In his statement of errors, Plaintiff contends that the ALJ erred by failing to find that he does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, Plaintiff states that he meets the criteria of Listing 11.05, benign brain tumor. (ECF No. 11 at 4.) Plaintiff also argues that the ALJ erred in making his RFC determination. Specifically, Plaintiff argues that the ALJ improperly discounted the limitations caused by Plaintiff's seizure disorder. (*Id*. at 10.)

The ALJ's opinion accounts for Plaintiff's seizure disorder by placing certain limitations on possible work, mostly related to safety. Among the limitations are never climbing ladders, ropes, or scaffolds; never working at unprotected heights or around moving machinery. (R. at 74-75.) In deciding not to include additional limitations, the ALJ stated that "[t]he amount of activities in which the claimant is able to engage is not indicative of someone with debilitating symptoms." (R. at 77.) According to the ALJ, these activities include taking his children to the park, taking care of his two dogs, taking care of personal needs, sometimes preparing meals, taking walks, going shopping, taking care of paying bills, watching television, listening to music, eating at a restaurant, visiting with his girlfriend and other friends, and doing household chores, such as cooking, laundry, and doing the dishes. (R. at 73.) The ALJ concluded that Plaintiff has only a mild restriction in his activities of daily living. (*Id*.)

The ALJ's conclusion in this regard is not supported by substantial evidence. In his adult function report, Plaintiff stated that he does take walks and takes his children to the park. (R. at 245.) Immediately following these comments, however, Plaintiff notes that he only has his children every other weekend and that his mother actually takes care of them when he does. (*Id*.) He also stated that it is his girlfriend who actually takes all of them to the park and that he is required to have another adult present when he is with his children. (R. at 245, 248.) In his subsequent testimony in front of the ALJ, Plaintiff reiterated that he can only be with his children when his mother is there, as well. (R. at 98.)

With respect to other activities of daily living mentioned by the ALJ, Plaintiff stated that it takes him, with his mother's help, ninety minutes to do basic grocery shopping. (R. at 247.) He prepares his meals only on a weekly basis. (R. at 246.) Plaintiff needs extensive reminders to perform basic daily needs, such as taking his medications. (R. at 97, 246.) In fact, Plaintiff testified that local sheriff's deputies have conducted welfare checks on him because he missed his daily reminder phone call from his mother to take his medications. (R. at 97.) Plaintiff also stated that he is unable to do housework or yardwork that involved tools. (R. at 247.) Plaintiff further stated that his parents cancelled his checking account. (R. at 247.) Plaintiff also testified that the medications required to control his seizures cause severe drowsiness, which itself may significantly limit his activities of daily living.

The credibility of Plaintiff's testimony is generally reserved for the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). In the instant case, however, the

record evidence supports Plaintiff's statements and credibility, and the ALJ has cited no evidence contradicting any of these statements. A *pro forma* statement that "claimant's statements . . . are not entirely credible for the reasons explained in this decision" is not sufficient when the ALJ then cites no cognizable reasons in his decision. (R. at 77.) When those reasons amount to a grossly incomplete summary of the material facts, judicial skepticism is warranted.

In sum, a review of the factual record reveals that the ALJ's analysis of the limiting effects of Plaintiff's seizure disorder is inadequate, bordering on misleading. The Court certainly cannot agree that the record supports the ALJ's conclusion that Plaintiff is "able to function independently." (R. at 74.) As a result, neither Plaintiff nor the Court can be confident that his claims were given a full and fair hearing in the administrative process. The Court, therefore, finds that substantial evidence does not support the ALJ's RFC determination. *Rogers*, 486 F.3d at 248–49 (holding that when an ALJ mischaracterized activities of daily living, his decision is not "sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [Plaintiff's] statements and the reasons for that weight."); *see Sitsler v. Astrue*, 410 F. App'x 112, 117–18 (10th Cir. 2011) ("[A]n ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations"); *see also Gardner v. Astrue*, No. CIV.A. 2:09-00011, 2009 WL 2356551, at *5 (M.D. Tenn. July 7, 2009), *report and recommendation adopted*, No. 2:09-0011, 2009 WL 2341137 (M.D. Tenn. July 29, 2009) (holding that mischaracterization of material facts calls into question ALJ's ability to clearly determine the effects of a claimant's impairments). In so finding, the Court makes no conclusions with respect to the actual limitations caused by Plaintiff's seizure disorder. Such a

determination awaits a full and fair analysis, upon remand, of *all* the limitations caused by Plaintiff's seizure disorder and the side effects of the medications taken to control it.[2]

## VIII.  CONCLUSION

In sum, for the reasons stated above, the Court concludes that substantial evidence does not support the ALJ's decision denying benefits.  Accordingly, Plaintiff's Statement of Errors is **AFFIRMED** and the Commissioner of Social Security's nondisability finding is **REVERSED** and **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g) for further proceedings consistent with the instructions in this Opinion and Order.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**


Date:  March 15, 2018                  */s/ Elizabeth A. Preston Deavers*
                                       **ELIZABETH A. PRESTON DEAVERS**
                                       **CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[2] This finding above obviates the need for in-depth analysis of Plaintiff's first and second assignments of error.  Thus, the Court need not, and does not, resolve the alternative basis Plaintiff asserts supports reversal and remand.